UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE ARNOLD MONTIEL,

Plaintiff,

v.

PAIGE WOLBERT,

Defendant.

Case No. 2:25-cv-12360
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

______________________________/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT ON EXHAUSTION (ECF No. 27) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 29)**[1]

## I. Introduction

This is a prisoner civil rights case. Plaintiff Jose Arnold Montiel, proceeding *pro se*, is suing Sergeant Paige Wolbert alleging violations of his constitutional rights while he was housed at the Saginaw Correctional Facility. (ECF No. 1). Following an order of partial dismissal,[2] Montiel's claim against

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[2] The district court dismissed Montiel's claims against Warden Adam Douglas, Assistant Warden Melissa Godfrey, and MDOC Director Heidi Washington, along with his claims based on restricted access to the law library, the correctional

Wolbert related to a wrongful misconduct ticket remains. (ECF No. 10). Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 19).

Before the Court is Wolbert's motion to dismiss for failure to state a claim or, alternatively, for summary judgment based on exhaustion. (ECF No. 27). In lieu of responding to Wolbert's motion, Montiel filed his own motion for summary judgment. (ECF No. 29). Wolbert filed a response to Montiel's motion. (ECF No. 31). For the reasons that follow, the undersigned recommends that Wolbert's motion to dismiss or, alternatively, for summary judgment on the basis of exhaustion (ECF No. 27), be GRANTED and Montiel's motion for summary judgment (ECF No. 29) be DENIED.

## II. Background

When considering a motion to dismiss, the undersigned considers the factual allegations of the complaint as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

In his papers,[3] Montiel alleges that while he was incarcerated, Wolbert, a corrections officer, filed a false misconduct ticket against him. (ECF No. 1,

---

facility staff members' bias against him, and damage to his personal property. (ECF No. 10).

[3] Montiel's complaint and motion for summary judgment are nearly illegible and difficult to decipher.

PageID.3). He claims that at a hearing that occurred on November 4, 2024, Wolbert gave false sworn testimony against Montiel as a witness and lied on a state court document. (*Id.*). Montiel asserts that Wolbert's testimony was "not credible" and did "not support [the] charge." (*Id.*) He claims that as a result of Wolbert's false testimony, Montiel was placed in a segregated housing for nine days. (*Id.*).[4]

On July 6, 2025, Montiel filed a complaint against Wolbert in the Western District of Michigan. (*Id.*, PageID.1). On July 31, 2025, the complaint was transferred to this district. (*Id.*).

## III. Legal Standards

### A. Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

[4] It is unclear whether Montiel alleges that he was found guilty or not guilty of the misconduct ticket and whether the nine days in segregation occurred before the hearing or as a sentence for the misconduct ticket. In the order of partial dismissal, the Court stated that "Montiel was then found guilty and sentenced to nine days in segregation." (ECF No. 10, PageID.19). However, Wolbert contends that the complaint "alleges Montiel was in segregation for nine days and was found not guilty following a November 4, 2024, hearing." (ECF No. 27, PageID.75).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented … nor may courts construct the Plaintiff's legal arguments for him.… [N]either may the Court 'conjure up unpled

allegations[.]'" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (citation modified).

B. Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Montiel is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (citation modified).

## IV. Discussion

As noted above, Wolbert has moved to dismiss the complaint for failure to state a claim and seeks summary judgment on the grounds that Montiel did not exhaust his administrative remedies. Each argument is considered in turn below.

### A. Failure to State a Claim

Wolbert argues that Montiel has failed to plausibly allege any constitutional claim. The undersigned agrees.

42 U.S.C. § 1983 "imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v.*

*Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id*. "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes*, 799 F.3d at 607.

Here, Montiel has not pled that he suffered any deprivations of rights secured by the Constitution. In his complaint, he asserted that Wolbert violated "due process by hindering me to be able by law to law library and be able to work on my legal court documents." (ECF No. 1, PageID.3). However, this claim, construed by the Court as alleging the denial of access to the courts, was dismissed. (ECF No. 10, PageID.22-23). He asserted no other deprivation of a federal right. As the *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines*, 404 U.S. at 520, the undersigned discusses below the other potential federal rights violations Montiel may be asserting in the complaint.

1. Fourteenth Amendment Due Process

The Fourteenth Amendment's Due Process Clause guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

> To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.

*EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (internal quotation marks and citation omitted). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Meanwhile, substantive due process concerns "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992) (citation omitted). "Proving a violation of substantive due process requires not only that the challenged state action was arbitrary and capricious, but also that the plaintiff has a constitutionally protected property or liberty interest." *Andreano v. City of Westlake*, 136 F. App'x 865, 870-71 (6th Cir. 2005). Substantive due process protects interests "implicit in the concept of ordered liberty." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). Such rights must be "deeply rooted in this Nation's history and tradition." *Id*. The existence of such "routine state created rights," however, is not proof of their fundamental nature. *Id*.

Assuming Montiel is intending to allege a due process claim, his complaint lacks factual statements to enable to Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The "mere fact of discipline or the imposition of sanctions in prison does not automatically trigger due process protections." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). As an inmate, Montiel had no "inherent constitutional right to placement in any particular security classification or housing assignment." *Carter v. Tucker*, 69 F. App'x 678 (6th Cir. 2003); *see also Williams*, 63 F.3d at 485 ("[A]n inmate possesses no inherent constitutional right to placement in any particular prison or in any particular section within the prison system."). A prisoner is entitled to due process protections in disciplinary proceedings when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486-487 (1995).

> The United States Court of Appeals for the Sixth Circuit has held that placement in administrative segregation for months, or even years under certain circumstances, does not implicate a liberty interest warranting due process. *See, e.g., Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant); *Jones v. Baker*, 155 F.3d 810, 812-813 (6th Cir. 1998) (2½ years in segregation during riot investigation did not deprive prisoner of liberty interest without due process). The Sixth Circuit has only found segregation lasting several years to be atypical and significant so as to implicate a liberty interest and requiring due process

> protections. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicated a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (8 years of segregation implicated a liberty interest).

*Collins v. Hobbs*, No. 25-CV-12885, 2025 WL 2797143 (E.D. Mich. Sept. 30, 2025).

Montiel claims that he was placed in segregation for nine days, but this allegation does not establish that he had a constitutionally protected liberty or property interest. The complaint does not sufficiently allege that Montiel has been deprived of life, liberty, or property in violation of the law.

2. First Amendment Retaliation

A retaliation claim under the First Amendment has three elements: 1) the plaintiff has engaged in protected conduct; 2) an adverse action was taken against the plaintiff such that it would stop a person of "ordinary firmness" from engaging in the conduct; and 3) there is a causal relationship between the elements one and two such that the adverse action was motivated in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Protected conduct encompasses the "provisions of the Constitution [that] define individual rights with which the government generally cannot interfere—actions taken pursuant to those rights are 'protected' by the Constitution." *Thaddeus-X*, 175 F.3d at 387.

If Montiel intends to assert a First Amendment claim, he has not sufficiently

pled that he engaged in protected conduct to establish a retaliation claim. Where Montiel has not engaged in any protected conduct, he cannot maintain a claim for retaliation. Without sufficiently claiming he engaged in protected conduct, it follows that he cannot plausibly allege that Wolbert took adverse action based on that protected conduct. *Id.* at 394. As such, Montiel has failed to state a claim for retaliation under the First Amendment.

3. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). "To move beyond the pleading stage in this setting, an inmate must allege that he has been deprived 'of the minimal civilized measure of life's necessities.'" *Harden-Bey v. Rutter*, 524 F.3d. 789, 795 (6th Cir. 2008) citing references (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying

the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal quotations and citations omitted).

The complaint contains no allegations that rise to the level of an Eighth Amendment violation. "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). Accordingly, Montiel has not alleged a plausible claim for relief under the Fourteenth, First, or Eighth Amendments.

### B. Exhaustion of Administrative Remedies

#### 1. Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a

useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

2. MDOC's Grievance Process

The Michigan Department of Corrections (MDOC) has established a three-step process to review and resolve prisoner grievances. "Under the [MDOC's] procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in

*Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ Y (underscoring omitted). (ECF No. 27-2, PageID.106). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

### 3. Analysis

Wolbert argues that Montiel has not exhausted his administrative remedies

against her because he did not attempt to resolve the issue prior to filing the grievance. The undersigned agrees.

Wolbert attached Montiel's Step III Grievance Report to their motion. (ECF No. 27-3). The report includes all grievances filed by Wolbert that were either denied or rejected through the final step of the grievance process. (*Id.*, PageID.112-114). Although the report documents two grievances filed by Montiel, only one grievance, SRF-24-11-0761-28I, discusses the relevant subject. In the underlying Step I grievance, Wolbert complained,

> Perjury. Fabrication of charge. Lied on alegations [sic] (charge) (misconduct) violated due process. Abuse of authority power. Difamation [sic] of character. She officer correctional Wolbert was the passive aggressive one. Wolbert not only stole my belongings TV/fan/etc. c/o Wolbert had other c/o's place me in administrative segregation were cells are designated to 'physically' separate prisoners in a special management needs room from general population/limit the prisoners movements. Such confinement used to 'achieve' effective administrative management maximizing disciplinary contact. Administrative segregation is the most restrictive level of security classification. Deprived of deprivation of possibility of parole 'chance'/appeal of courts (appellate) MAACS Visiting policy directive 05.03.140/telephone use PD 05.03.130/Good time disciplinary 03.01.100, 03.01.101/03.01.105. Inhumane treatment to be free from all malice 'premeditated' harm, brutality, general living conditions. Deprivation: emotional, mental, scitick [sic], mental harassment. Due to camera video surveillance said to of not be on at that time in unit. "500"' said to been housed in cell 47 (A wing 500) and that area being a "blind spot" camera does not pick up. (See) deprived (deprivation) of safety.

(*Id.*, PageID.117).

Montiel's grievance was rejected at Step I for failure to attempt a resolution with the relevant staff member prior to filing the grievance. (*Id.*). The rejections were upheld at Step II and Step III. (*Id.*, PageID.115-116).

When a grievance has been rejected by the MDOC, the Court must consider whether it was *properly* rejected before finding the plaintiff's administrative remedies unexhausted. *See, e.g.*, *Merrill v. King*, No. 2:22-CV-10541, 2022 WL 18402555, at *4 (E.D. Mich. Dec. 21, 2022), *report and recommendation adopted*, 2023 WL 361997 (E.D. Mich. Jan. 23, 2023). "[T]he Court is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012). Exhaustion of administrative remedies means "using all steps that the agency holds out, and doing so *properly*." *Woodford*, 548 U.S. at 90 (citations omitted); *see also Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at *6 (E.D. Mich. Feb. 27, 2019) ("The rejection of a grievance is not, however, the end of the analysis. It is appropriate for the Court to review the prison official's administration of the state grievance procedure."), *report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).

Under MDOC PD 03.02.130 ¶ P(4), a grievance may be rejected if

> [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by

> circumstances beyond their control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs.

(ECF No. 27-2, PageID.105). Although the directive requires that a prisoner make an attempt to resolve the issue before submitting a grievance, it does not define what qualifies as an "attempt to resolve." *See Burton v. Michigan Dep't of Corr.*, No. CV 20-13104, 2021 WL 3642068, at *5 (E.D. Mich. July 30, 2021), *report and recommendation adopted sub nom. Burton v. Rabish*, 2021 WL 3633607 (E.D. Mich. Aug. 17, 2021) ("Indeed, careful review of the Policy reveals that there are no provisions defining the parameters of what qualifies as an 'attempt to resolve the issue with the staff member involved.'").

Each Step I grievance contains a section asking the prisoner, "what attempt did you make to resolve this issue prior to writing this grievance?" (ECF No. 27-3, PageID.117). In this section on his grievance, Montiel answered that he "spoke to hearing officer (investigator) R. Blakeley [who] said to write grievance and for the records of sanctions and for the videos that they have in evidence." (*Id.*). Montiel did not claim to have attempted a resolution with Wolbert concerning the misconduct ticket.

Thus, Montiel's attempt to resolve the issue was insufficient because he sought a resolution from the wrong staff member by speaking with "Blakeley" instead of Wolbert. Montiel's Step I grievance was thus properly rejected under MDOC PD 03.02.130 ¶ P(4), leaving his administrative remedies unexhausted.

C. Montiel's Motion for Summary Judgment

Where, as here, a plaintiff seeks summary judgment on claims for "which he bears the burden of proof at trial, he faces a 'significantly higher hurdle.'" *Horton v. Greene*, No. 16-CV-12715, 2019 WL 1552480, at *2 (E.D. Mich. Apr. 10, 2019) (quoting *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002)). The summary judgment burden here is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000)).

Montiel has not met this burden. To the extent that his motion is legible and coherent, it summarizes the allegations in the complaint, but he does not present any evidence. Furthermore, because he has not stated a claim for available relief and has not exhausted his administrative remedies, his summary judgment motion should not be granted.

D. Three Strikes Rule

Although Wolbert did not raise this issue, a review of the Court's electronic case management system shows that Montiel has been deemed a three-striker for purposes of filing new prisoner civil rights complaints. Under 28 U.S.C. § 1915(g), a plaintiff with "three strikes"—meaning three prior cases brought while

incarcerated or detained that were dismissed as frivolous, malicious, or failing to state a claim—may not bring another civil action unless he or she is under imminent danger of serious injury. Montiel has three strikes, all of which arose in the Western District of Michigan. *See Montiel v. Skinner*, No. 1:24-CV-1268, 2025 WL 1003930 (W.D. Mich. Mar. 12, 2025), *report and recommendation adopted*, No. 1:24-CV-1268, 2025 WL 1000667 (W.D. Mich. Apr. 3, 2025); *Montiel v. Cnty. of Van Buren*, No. 1:25-CV-66, 2025 WL 913751 (W.D. Mich. Mar. 26, 2025); *Montiel v. Johnson*, No. 1:25-CV-122, 2025 WL 807756 (W.D. Mich. Mar. 14, 2025). Additionally, another judge in this district recently dismissed one of Montiel's complaints based on the three strikes rule. *Montiel v. Diakite*, No. 2:26-CV-11644, 2026 WL 2321600 (E.D. Mich. Aug. 11, 2026). Here, Montiel has not alleged that he is in imminent danger of serious physical injury, thus his complaint is also subject to dismissal under § 1915(g).

## V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Wolbert's motion to dismiss or, alternatively, for summary judgment on the basis of exhaustion (ECF No. 27) be GRANTED, and Montiel's motion for summary judgment (ECF No. 29) be DENIED.

Dated: September 25, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager